Signed: February 08, 2010

_____
**LESLIE TCHAIKOVSKY**
**U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                              No. 08-42942 TM
                                                   Chapter 7
OMER BEAIRD,

            Debtor.
_____/

**MEMORANDUM OF DECISION RE MOTION FOR RECONSIDERATION
AND MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY**

The above-captioned debtor (the "Debtor") moved for reconsideration of the Court's order: (1) approving the chapter 7 trustee's (the "Trustee") motion to sell certain real property and (2) denying the Debtor's motion to: (A) reconvert the case to chapter 11 and (B) vacate the order granting the Trustee's motion to abandon certain real property, formerly property of the bankruptcy estate, back to the Debtor. Wachovia Mortgage FSB ("Wachovia") moved for relief from the automatic stay as to three properties owned by the Debtor and previously abandoned by the Trustee. For the reasons stated below, the Debtor's motion for reconsideration will be denied. Wachovia's motions will be denied. Because the properties in question are no longer property of the estate, they are not protected

by the automatic stay. However, the Court will sign orders so stating if submitted by Wachovia.

## BACKGROUND

The Debtor filed a voluntary petition seeking relief under chapter 11 of the Bankruptcy Code on June 10, 2008. In his Schedules of Assets and Liabilities (the "Debtor's Schedules"), he listed the following real property, valued as set forth below and encumbered by liens as set forth below:

1. The Debtor's residence located at 14 Snow Court, Orinda, California (the "Snow Court House"), valued at $1.2 million and subject to one or more secured claims totaling $694,135.

2. A three-unit income property located at 406-410 Clayton Street, San Francisco, California (the "Clayton Street Three-Plex"), valued at $1.5 million and subject to one or more secured claims totaling $809,416.

3. A co-tenancy interest in a residence located at 1677 Carpentier Street, San Leandro, California (the "Carpentier Street House"), valued at $450,000 and subject to one or more secured claims totaling $215,444.

4. A co-tenancy interest in a two-unit residential building located at 1645 Carpentier Street, San Leandro, California, valued at $700,000 (the "Carpentier Street Duplex") and subject to one or more secured claims totaling $602,884.

5. A residence located at 201 Makin Road, Oakland, California (the "Makin Road House"), valued at $450,000 and subject to one or more secured claims totaling $214,006.

2

6. A multi-unit property, the nature of which is not described, located at 262-266 Fitzgerald Road, Oakland, California (the "Fitzgerald Road Multiple"), valued at $500,000 and subject to one or more liens totaling $330,079.

7. A residence located at 8331 Dowling Street, Oakland, California (the "Dowling Street House"), valued at $600,000 and subject to no secured claims.

8. A residence located at 200 Makin and 9310-12 Empire Road, Oakland, California (the "Empire Road House"), valued at $500,000 and subject to one or more secured claims totaling $261,086.

A status conference was scheduled in the case on July 14, 2008. Prior to the status conference, the Debtor filed a status conference statement. In it, he represented that his goal in chapter 11 was to increase his net rental income by renting vacant units that had been renovated after evicting defaulting tenants. He asked for 120 days to file a plan and disclosure statement. Accordingly, the Court set a November 11, 2008 deadline for filing a plan and disclosure statement.

On November 11, 2008, instead of filing a plan and disclosure statement, the Debtor filed a motion to extend the deadline for an additional 90 days: i.e., to February 9, 2009. The motion represented that he had increased his rental income by $6,900 and that his total monthly income now exceeded his total monthly expenses. However, he represented, before a plan could be formulated, he needed to complete a loan modification agreement with Wachovia which held mortgages on all his properties. No proposed

3

order was submitted. As a result, the motion to extend was neither granted nor denied. However, the Court calendared the matter for review after February 9, 2009.

When no plan or disclosure statement was filed by February 9, the Court issued an order to show cause why the case should not be converted to chapter 7, dismissed, or a chapter 11 trustee appointed, scheduling a hearing on the order to show cause for March 16, 2009. On March 12, 2009, the Debtor filed a response to the order to show cause. In the response, the Debtor stated that the reason that no proposed order had been submitted was that the motion needed to be amended to seek a longer extension of the plan filing deadline.

On March 15, 2009, the Debtor filed an amended motion to extend, seeking an extension of the plan filing deadline to June 10, 2009: i.e., the one year anniversary of his chapter 11 petition. In the amended motion, the Debtor represented that he was still attempting to obtain a loan modification agreement with Wachovia.

The Debtor also noted that the Internal Revenue Service (the "IRS") had filed a proof of claim for $788,861.32 for the tax years 2001 through 2007. He admitted that he had not filed tax returns for these years at the time he filed his chapter 11 petition. He represented that, since filing, he had filed his returns for 2001-03 and 2007 and that the returns showed that he had no tax liability for these years and in fact the right to a $6,839 refund. The Debtor represented further that the tax returns for 2004-06 had also been completed and demonstrated that he had no tax liability to the IRS. However, he represented that the tax preparer refused to release the

4

returns until the Debtor paid his bill. He represented that this matter needed to be resolved before he could file a plan.

Given the lengthy period that the Debtor had already been in chapter 11, the Court granted the motion to extend the plan filing deadline only to May 18, 2009 and continued the hearing on the order to show cause to June 1, 2009. The Debtor filed a plan and disclosure statement on May 18, 2009, which the Court reviewed. At the continued hearing on the order to show cause on June 1, 2009, the Court advised the Debtor that disclosure statement was seriously deficient in that contained virtually no financial information, no discussion of feasibility, and no liquidation analysis and that it found the plan to be in bad faith. Despite what appeared to be approximately $2 million in equity in the Debtor's real property, the plan proposed to make no payments to unsecured creditors until 2014.

The Court concluded that it was unlikely that the Debtor would be able to propose a confirmable reorganization plan, given his goals. It concluded that the best course was to direct the appointment of a chapter 11 trustee who would presumably act more pragmatically. A trustee (the "Trustee") was appointed on or about June 17, 2009. On June 24, 2009, the Trustee filed an ex parte motion to convert the case to chapter 7.[1] The motion stated that on June 18, 2009, the Trustee had met with the Debtor and the Debtor's counsel in order to evaluate the value of the Debtor's real property

---

[1] The Trustee stated that he had filed the motion on an ex parte basis because the Court could have converted the case at the hearing on the order to show cause. The ex parte motion was granted on June 24, 2009.

5

and whether it was preferable to retain the case in chapter 11 or to convert it to chapter 7. The motion stated that the Trustee had concluded that conversion was the better of the two alternatives. He believed that some of the real property, if sold, would produce sufficient net proceeds to pay unsecured creditors. Moreover, this could be done more economically in a chapter 7 case than in a chapter 11 case given the need to formulate a plan in a chapter 11. The Trustee indicated that he intended to move to abandon the real property that appeared to have no net equity or that the estate did not need to liquidate to pay creditors.

On September 16, 2009, the Trustee filed a notice of intent to abandon the Carpentier Street House and Duplex, the Empire Road House, the Makin Road House, and the Fitzgerald Street Multiple (collectively the "Abandoned Real Property"). The notice indicated that it did not appear likely that the sale of these properties would produce any net proceeds for unsecured creditors. On September 17, 2009, the Trustee filed a notice of intent to sell the Dowling Street House to John A. Camacho for $126,800 subject to overbids. In each instance, interested parties were given 20 days to object. The Debtor did not file an objection to the notice of intent to abandon the Abandoned Real Property, and an order approving the abandonment was filed on October 14, 2009.

The Debtor did object to the notice of intent to sell the Dowling Street House. In the objection, the Debtor asked that a hearing on the proposed sale be scheduled for October 29, 2009 or later to enable the Court to consider at the same time the Debtor's

6

motion to reconvert the case to chapter 11. The objection represented that there was a strong likelihood that the Debtor would be able to secure a pre-packaged plan with creditors' approval. In any event, the objection represented that the Debtor had about $10,000 in net monthly income with which to fund a plan. The Debtor represented that he would file the motion to reconvert on or before October 15, 2009.

In deference to the Debtor's objection, the Trustee did not immediately proceed with the proposed sale. However, no motion to reconvert the case was filed on or before October 15, 2009. As a result, on October 24, 2009, the Trustee filed a motion to sell the Dowling Street House and scheduled it for hearing on December 3, 2009.

On October 30, 2009, the Debtor filed a motion to reconvert the case and to vacate the October 14, 2009 order abandoning the Abandoned Real Property back to the Debtor. This hearing was also scheduled for December 3, 2009. In the motion, the Debtor acknowledged that he had not prosecuted his chapter 11 case in a diligent fashion prior to its conversion. He represented that he now understood the requirements of chapter 11 and was prepared to satisfy them. He represented that he intended to fund the plan primarily through the sale of the Dowling Street House which he anticipated would produce approximately $100,000 in net sale proceeds.

On November 17, 2009, the Trustee filed an opposition to the Debtor's motion. In the opposition, the Trustee represented that the Debtor had attempted to interfere with the Trustee's efforts to sell

7

the Dowling Street House.  First, the Debtor refused to give the Trustee's representative a key to the premises.  Later, after the Trustee had located a proposed buyer, the Debtor attempted to discourage the proposed buyer from purchasing the Dowling Street House by informing him that the area in which the Dowling Street House was located was very dangerous.

On October 18, 2009, the Debtor filed an opposition to the Trustee's motion to sell the Dowling Street House.  He now agreed that the Dowling Street House should be sold.  However, he urged that it be sold to Beyene Negewo ("Negewo"), whom he represented had submitted a timely overbid to purchase the Dowling Street House for $136,800.  He also argued that the case should then be reconverted to chapter 11, and the funds should be turned over to him to fund a plan.

At the hearing, the Court asked the Trustee to explain why he had not considered accepting the proposed overbid of Negewo since it was for more money.  The Trustee explained that a broker purportedly representing Negewo did attend the sale auction and purport to submit an overbid.  However, the broker had no offer in writing from Negewo to support the overbid.  The Trustee stated that he had also been concerned that there might be a connection between the proposed overbidder and the Debtor.  He gave Negewo's broker until 5 p.m. that day to submit a written overbid signed by Negewo as well as a signed representation that there was no connection between him and the Debtor.

8

At the hearing, the Debtor conceded that Negewo failed to submit a written offer for several weeks after the sale auction and that, initially, Negewo had agreed to give the Debtor an option to repurchase the Dowling Street House. The Debtor represented that he had released Negewo from this agreement when he learned that it might present a problem. The Trustee responded that he had also never seen any evidence that Negewo was capable of funding the overbid. He stated that if Negewo were present at the hearing with a cashier's check to fund the proposed overbid, he would recommend selling the Dowling Street House to him. However, neither Negewo nor anyone on his behalf was present at the hearing. Based on these facts, the Court overruled the Debtor's objection to the sale and approved the sale to Camacho.

The Court also denied the Debtor's motion to reconvert the case to chapter 11 and to vacate the order abandoning the Abandoned Properties. The Court stated that it was clear that the Debtor wished to retain as much of his real property as possible even at the risk that the unsecured creditors would receive no payment. His negotiation of an option to repurchase the Dowling Street House was evidence of this determination. The Court expressed the belief that, if the $100,000 in sale proceeds were turned over to the Debtor, it would be used to cure the arrearages on the Debtor's real property without regard to whether there was any equity in the real property at present. Although he may have the best of intentions of paying the unsecured creditors later, when and if he was able, his ability to do so at some time in the future was uncertain.

9

The Debtor's counsel admitted that, if the case were reconverted to chapter 11, the Debtor's plan would be to pay off the arrearages on the real property first and to begin payments to the unsecured creditors after the arrearages were cured. He stated that the Debtor may have received bad legal advice from his prior counsel and may have acted inappropriately in the past. However, he was now rehabilitated and would behave responsibly. The Court acknowledged that it was a close question, given the fact that no creditor was objecting to the reconversion. However, given the Debtor's past conduct in the case and the delays that had already occurred, the Court concluded that conversion of the case back to chapter 11 presented too great a risk to unsecured creditors.

Orders were entered approving the sale of the Dowling Street House to Camacho and denying the Debtor's motion to reconvert the case and to vacate the abandonment order on December 12, 2009. On December 28, 2009, the Debtor filed a notice of appeal and a motion to reconsider both orders. The motion to reconsider was set for hearing on February 5, 2009.

In the meantime, Wachovia filed motions for relief from the automatic stay with respect to the Carpentier Street House, the Empire Road Tri-Plex and the Makin Road House. Although the Court noted that, since they had been abandoned by the Trustee, there was no automatic stay protecting these properties, because Wachovia did not object, the Court continued the hearings to February 5, 2009, to be heard with the motion to reconsider. All matters were fully briefed, and the parties appeared at the February 5, 2009 hearing.

10

At the conclusion of the hearing, the Court stated its ruling on the record and indicated that it would issue a written opinion setting forth the basis for its decision.

**DISCUSSION**

**A. MOTION TO RECONSIDER**

The Debtor asked the Court to reconsider its approval of the sale of the Dowling Street House and its order denying the Debtor's motion to reconvert the case to chapter 11 and to vacate the order abandoning the Abandoned Properties. Motions for reconsideration are more properly viewed as motions to alter or amend a judgment under Rule 59(e) of the Federal Rules of Civil Procedure, made applicable here by Rule 9023 of the Federal Rules of Bankruptcy Procedure. The grounds for such a motion are "(1) manifest error of fact; (2) manifest error of law; or (3) newly discovered evidence." See In re Hansen, 368 B.R. 868, 878 (Bankr. 9th Cir. 2007).

The Debtor failed to satisfy any of these three grounds. He contended that the Court committed manifest error of law by permitting the Dowling Street House to be sold. He contended that the Court was required to compel the Trustee to "marshal" the Debtor's assets by requiring him to sell property other than the Dowling Street House first. In support of this contention, he cited Cal. Civ. Code § 3433 and § 2899. Section 3433 provides as follows:

> *Relative Rights of Different Creditors.* Where a creditor is entitled to resort to each of several funds for the satisfaction of his claim, and another person has an interest in, or is entitled as a creditor to resort to some, but not all of them, the latter may require the former to seek satisfaction from those funds to

11

> which the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction, and without doing injustice to third persons.

Cal. Civ. Code § 3433. Cal. Civ. Code § 2899 provides as follows:

> *Order of Resort to Different Funds.* Where one has a lien upon several things, and other persons have subordinate liens upon, or interests in, some but not all of the same things, the person having the prior lien, if he can do so without risk of loss to himself, or of injustice to other persons, must resort to the property in the following order, on the demand of any party interested: 1. To the things upon which he has an exclusive lien; 2. To the things which are subject to the fewest subordinate liens; 3. In like manner inversely to the number of subordinate liens upon the same thing; and, 4. When several things are within one of the foregoing classes, and subject to the same number of liens, resort must be had – (1) To the things which have not been transferred since the prior lien was created; (2) To the things which have been so transferred without a valuable consideration; and, (3) To the things which have been so transferred for a valuable consideration in the inverse order of the transfer.

Cal. Civ. Code § 2899.

The Debtor noted that the doctrine of marshaling has been applied in Ninth Circuit bankruptcy cases, citing See In re DAK Industries, 195 B.R. 129, 136 (Bankr. C.D. Cal. 1995). The Debtor asserted that he had obtained a new comparable sale analysis demonstrating that the Carpentier Street House would generate $168,000 in net cash proceeds and that he had recently signed a listing agreement for the Carpentier Street House. In support of this contention, he attached copies of the documents in question. Neither document is persuasive.

The first document is entitled Comparable Sales For Property Located at 1677 Carpentier St San Leandro, CA 94577-4420. It is unsigned, refers to assessed rather than market values, and contains inconsistent figures with respect to those values. The second document is not a listing agreement. It is entitled Disclosure Regarding Real Estate Agency Relationship. Although it lists the Debtor and his wife as sellers, it contains no reference to the Carpentier Street House. Moreover it is also unsigned.

The Debtor also contended that he had newly discovered evidence concerning the value of the Dowling Street House. He contended that, at the time of the hearing, he was unaware of the many unique features of the Dowling Street House that enhanced its value. He asserted that these features made it clear that the sale price was much too low and that the actual value of the Dowling Street House was between $175,000 and $319,000. In support of this contention, he attached a document entitled Comparable Sales for 8331 Dowling St, Oakland, CA 94605-3440. Like the other comparable sale analysis, the document was unsigned and ambiguous.

In response to the Debtor's motion, the Trustee filed a status report and opposition. By way of a status report, the Trustee informed the Court that the sale of the Dowling Street House to Camacho had closed on January 20, 2010, title had been transferred to him, and the estate had received $111,707.99 in net sale proceeds.

Thus, pursuant to 11 U.S.C. § 363(m), the Trustee noted the sale order may not be altered at this time.[2]

The Trustee argued that the doctrine of marshaling had no relevance to the facts presented here. Moreover, he noted that the Debtor failed to raise this legal theory prior to the entry of the sale order and the order denying the motion to reconvert the case. He asserted that a motion for reconsideration may not be based on a new legal theory. See Simon v. United States, 891 F.2d 1154, 1159 (5th Cir. 1990).

The Trustee also disputed the Debtor's contention that the evidence of the unique features of the Dowling Street House, which the Debtor contended affected its value, constituted newly discovered evidence. According to the Truste, evidence does not qualify as newly discovered unless the moving party could not have discovered the evidence earlier through reasonable diligence. See Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399, 425 (1923). The evidence offered by the Debtor could have been discovered and presented earlier.

The Court finds the Trustee's recitation of the law accurate and his application of the law to the facts presented here sound. As a result, it will deny the motion for reconsideration. It is clearly too late to reconsider the sale order. The Debtor failed to raise

---

[2] Section 363(m) provides that, unless a sale order is stayed, the reversal or modification of the order on appeal will not affect the validity of a sale to a good faith purchaser. The Debtor failed to obtain a stay of the sale order. There is no evidence that Camacho was not a good faith purchaser.

14

the legal theory of marshaling prior to entry of the sale order. It was neither the Court's nor the Trustee's responsibility to choose which property to sell in such a way as to benefit the Debtor in the absence of a request by the Debtor. Both Cal. Civ. Code § 3433 and § 2899, recited above, indicate that marshaling is required only when the party to be benefitted demands it. At the sale hearing, the Debtor did not oppose the sale of the Dowling Street House. He merely asserted that it should be sold to a different person and that he should be given control of the net sale proceeds.

The Debtor has also failed to present sufficient grounds for reconsideration of the order denying the motion to reconvert the case and to vacate the order abandoning the Abandoned Real Property. The Court considered the possibility of converting the case and retaining the Trustee as a chapter 11 trustee at the hearing on the order to show cause. It declined to do so primarily because the Debtor's plan was to use the sale proceeds to cure the arrearages on his real property, requiring the unsecured creditors to wait for payment until later and subjecting them to the uncertainty of the Debtor's ability to make any such payments at that time. The Court continues to believe that conversion of the case to chapter 7 was the appropriate decision.

**B. MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY**

Wachovia has filed three motions for relief from the automatic stay, all with respect to the Abandoned Real Property. The automatic stay does not protect property that has been abandoned from the estate. See 11 U.S.C. § 362(c)(1). Wachovia presumably filed the

15

motions and agreed to continue the hearings on the motions in light of the Debtor's motion to reconsider the Court's order denying his motion to vacate the abandonment order. Since the Court has concluded that the motion for reconsideration should be denied, Wachovia is free to exercise its rights under state law with respect to the three properties. The Court will not grant relief from the automatic stay since such relief is unnecessary. However, the Court will sign an order or orders stating that the automatic stay does not apply to the property in question if Wachovia so desires.

## CONCLUSION

The motion to reconsider the order approving the sale of the Dowling Street Property to Camacho will be denied. The sale has already been concluded, and there are no legal or equitable grounds upon which it can be set aside. The Trustee is directed to submit a proposed form of order in accordance with this decision.

The motion to reconsider the order denying the motion to reconvert the case to chapter 11 and to vacate the order abandoning the Abandoned Real Property will also be denied. The Debtor was in chapter 11 for nearly a year before proposing a plan of reorganization. The plan filed at that time was in bad faith, and the disclosure statement contained no meaningful financial information. The Debtor's avowed goal was and is to hold onto as much of his real property as possible. This is a reasonable goal from the Debtor's point of view. However, it presents too big a risk of nonpayment for unsecured creditors. In chapter 7, the net sale proceeds from the sale of the Dowling Street House will be used to

16

pay unsecured claims. The Debtor will presumably be able to retain the bulk of his real property. The Trustee is directed to submit a proposed form of order in accordance with this decision as well.

Wachovia's three motions for relief from the automatic stay will be denied as there is no automatic stay protecting the real property in question. The properties in question have been abandoned by the Trustee, and the Court is denying the motion to vacate that decision. However, Wachovia may submit orders declaring that there is no automatic stay applicable to these properties.

END OF DOCUMENT

COURT SERVICE LIST

Ellen E. S. Rodin
Law Office of Ellen E. S. Rodin
1611 Telegraph Ave., Ste. 729
Oakland, CA 94612

Jeremy W. Katz
Pinnacle Law Group
425 California St. #1800
San Francisco, CA 94104

Dave M. McGraw
Law Offices of Dave M. McGraw
2890 N. Main St., Ste. 307
Walnut Creek, CA 94597-2738